HEARD APRIL TERM, 1876.

## McLAUGHLIN *vs.* COUNTY COMMISSIONERS.

"M" having claims against the County which had been audited by the County Com-missioners, and the amount thereof fixed, the Legislature passed an Act author-izing the County Commissioners to levy "three and one-half mills, one-half mill of which, if so much be necessary, shall be set apart and paid by the County Trea-surer in settlement of the audited claims of 'M.'"

The tax having been levied, and the moneys realized therefrom being in the hands of the County Treasurer, "M" demanded of the County Commissioners checks on the County Treasurer for the amount to which "M" was entitled under the terms of the Act, which were refused: *Held*, That *mandamus* would lie to compel the County Commissioners to draw the checks: *Held, further*, That the Act in ques-tion was not the exercise of a judicial power, but merely such a tender of means for the payment of the claims which any individual debtor would have the right to make to his creditor, and which the creditor could reject or accept as he pleased.

BEFORE THE SUPREME COURT, COLUMBIA, APRIL 5, 1876.

This was a petition to the Supreme Court by Mrs. M. A. Mc-Laughlin for a *mandamus* to compel the County Commissioners of Charleston County to draw a check upon the County Treasurer for

the amount of her claims therein specified against the County of Charleston. .

The facts are stated in the opinion of the Court.

*Melton, Chamberlain & Wingate,* for petitioners.

*A. G. Magrath,* for the County Commissioners.

The opinion of the Court was delivered by

WILLARD, A. J.   The relator demands a writ of *mandamus* to compel the County Commissioners of Charleston to deliver to her checks on the County Treasurer drawn against a fund raised by special tax, and specifically appropriated by law to the payment of certain audited accounts against the County held by her.

It appears from the petition for *mandamus,* uncontradicted by the return, that the relator holds various claims against the County of Charleston, amounting in the aggregate to $12,904.87, which were in the year 1872 audited by the County Commissioners, the predecessors of the present incumbents, at that sum.

By an Act of Legislature, approved December 22d, 1875, (15 Stat., 610, § 7,) authority was conferred on the County Commissioners of Charleston to levy "three and one-half ($3\frac{1}{2}$) mills, one-half ($\frac{1}{2}$) mill of which, if so much be necessary, shall be set apart and paid by the County Treasurer in settlement of the audited claims of M. A. McLaughlin." The tax in question has been levied, and moneys realized therefrom are now in the hands of the County Treasurer. The relator has demanded of the County Commissioners checks on the County Treasurer for the amount subject to payment to her under the terms of the law, which have been refused.

The question upon *mandamus* is, whether a specific ministerial duty has been imposed by law to perform the act which the relator seeks to compel. If such appears to be the case, and her demand for compulsory performance is in support of a recognizable right that has been denied, then the *mandamus* ought to go.

It is very clear that if the Act in question is operative according to its declared intention, then the relator has acquired an unconditional right to the whole of the fund resulting from the tax of one-half mill or so much thereof as may be necessary to pay the amount of the claims held by her that had been audited and were unpaid

at the date of the passage of the Act. This is the only demand the relator makes, her present application having relation solely to the fund in hand under the appropriation to her, and to claims audited before the passage of the Act.

The first point of objection on the part of the County Commissioners is, "that they are not, by the said Section of the said Act, to do anything in regard to the claim of the relator, and therefore the *mandamus* prayed for against them ought not to be ordered to issue." When an Act directs money to be paid from a public treasury, but does not specify the mode of making payment, it is to be regarded as intending that such payment, as to matters of form, shall be made in conformity to the general regulations of law respecting payments of such class or character. Such an Act imposes a specific obligation upon all officers having duties to perform necessary for the making of such a payment, under the general laws relating to that subject, upon the familiar principle that a legislative mandate implies the requisite means of its performance, if in the general compass of the powers of the officers by whom the mandate ought to be executed.

No dispute is made as to its being within the general duties of the County Commissioners to draw checks upon the County Treasurer for amounts properly payable from the County treasury. It follows that, unless it can be made to appear that the Act is inoperative, in so far as it assumes to give the exact measure of duty on the part of the County Commissioners as it regards the relator's demand, the writ should issue. The proposition relied on by the County Commissioners to sustain their position that the law is inoperative is, that the question, to the extent that it assumed to fix the relator's right to the fund in question, was the exercise of a judicial function that could not be constitutionally performed by the Legislature.

The County Commissioners, in presenting this proposition, connect it with the statement of the fact that an action is pending relating to the same claims and undecided; but this fact can have no bearing on the question of the constitutional authority of the Legislature. If they have authority to direct that the claims should be paid at all, they clearly have authority to direct such payments, notwithstanding the pending of an action for their recovery.

The constitutional question must be considered in reference to two distinct clauses of the Constitution.

Section 26, Article I, of the Constitution declares: "In the government of this Commonwealth, the legislative, executive and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of the said departments shall assume to discharge the duties of any other."

Had the question been the right of the Legislature to fix the amount due to a creditor of the State, no serious doubt could have arisen as to its competency so far as it regards the Section of the Constitution just quoted. Should the Legislature attempt to vary the obligation of its contract with its creditor, that would present a totally different question arising under another clause of the Constitution. But where the sole effect of its action was to impose a burden on the State, it could not be affirmed that such an act had anything of a judicial nature in it. Every individual, *sui juris*, has a right to concede his liability to a demand against him, and that concession becomes evidence of his liability so as to displace other proofs, and in some instances binds him irrevocably. The same right resides somewhere in the government of the State, and its character is no more judicial than when exercised by an individual. In the case of the State, it affords the only remedy the creditor of the State can acquire. He cannot sue the State unless the legislative authority is exercised so as to create an imperative duty on the part of some public officer to pay the demand of such creditor. He is without remedy. This power is not lodged with the judiciary, for precluding the creditor from suing the State is equivalent to declaring that the adjustment of the indebtedness of the State belongs to some other department of the government than the judiciary. Then it must be lodged with the Legislature, unless placed by the Constitution in the hands of some executive or administrative officer. Can, then, an Act of the Legislature fixing the indebtedness of a County, as it regards a person claiming to be its creditor, be regarded as an assumed exercise of a judicial authority? Whether the validity of such an Act is affected by the constitutional powers granted to County Commissioners is another question. Clearly it is not judicial. Had the Act assumed to determine as matter of law the true indebtedness existing between the relator and the County of Charleston, and proceeded to make provision for its

payment, its construction would necessarily be such as to preclude the idea that it was an attempt on the part of the Legislature to substitute, as against the will of the creditor, its own measure of obligation in the place of that existing under the law of the contract. The natural conclusion, as it regards such an Act, would be that its object was to tender to the party specific means for the payment of his debt, in excess of that which he had a right to claim under the law of his contract, on condition that he would accept the ascertainment of the debt as final. This would be tendering a compact which an individual is competent to offer and make in his own case, and which the State as certainly should be capable of doing. If the creditor should not accept, it might happen that the law would fall to the ground and the rights of the parties would continue to stand on the law of the contract.

The fact that such an Act may have the effect to fix upon the County an indebtedness not fairly resulting from the law of the contract does not in itself make the Act an exercise of judicial function. A judicial act assumes to bind the different parties antagonizing each other before the Court; this only assumes to bind one of them. It is not assuming to do what the Courts ought to do, but precisely what they ought not to do, in any case, and that for the reason that it is not within the judicial function but something opposite to it in its nature. This is clearly no ground for holding that the Act in question in its effect upon the County is an encroachment upon the proper province of the judiciary.

It will not be necessary to consider the question whether the Legislature have authority to dispense with the exercise of the powers of the County Commissioners conferred on them by the Constitution and substitute its own will as to the nature and extent of the burden of indebtedness imposed on the County in the place of the proper action and audit of the County Commissioners, for the Act in question does not tend to any such effect. The Constitution (Article XIV, Section 19,) gives County Commissioners jurisdiction in all matters relating to disbursements of money for County purposes. What the powers are, if any, that were intended by this Section to be placed beyond the authority of the Legislature need not be considered. The Legislature and the County Commissioners who audited the relator's claim both considered that they had fully exercised their constitutional and legal powers in reference to the ascertainment of the indebtedness to the relator. All that remained

was the steps for payment. The Act recites the fact of audit and bases the provisions for payment upon such action of the County Commissioners. It will hardly be questioned, and certainly cannot be successfully disputed, that where there has been a full exercise of the functions of the County Commissioners, and that action receives the direct assent of the Legislature, that that is the end of the matter.

It is not necessary to consider the question whether the Commissioners have authority to revise the audit of their predecessors, and whether such authority is interfered with by the Act, for it does not appear that they have taken any steps in that direction or intend to take any. All they claim in their return is that they are not bound to do anything but to sit and await the result of a suit at law. They do not interpose their right to audit or reaudit as a constitutional objection to giving the Act the effect contended for by the relator.

It is clear that the Legislature has the right to bind the people of a County by a law unless precluded from so doing by the Constitution, and it is equally clear that where the constitutional action of the County authorities has resulted in the ascertainment of a debt due from the County the Legislature has authority to give that determination the force of a law in binding the people of the County.

Under these views it must be concluded that the relator is entitled to the remedy demanded in her petition.

*Moses,* C. J. and *Wright,* A. J., concurred.